FILED

05/01/2017

Clerk of the
Appellate Courts



IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 25, 2017 Session

## CAROLYN ANN TALLEY v. CLINTON EUGENE TALLEY

**Appeal from the Circuit Court for Hamilton County**
**No. 12-D-1515      L. Marie Williams, Judge**

_____

**No. E2016-01457-COA-R3-CV**

_____

In this divorce action, the trial court valued and allocated the parties' marital assets. The court also awarded the wife alimony *in futuro* in the amount of $1,800 per month while awarding the wife attorney's fees as alimony *in solido* in the amount of $35,710. The husband has appealed. Discerning no error in the trial court's marital property division, we affirm that distribution. Furthermore, we affirm the award of alimony *in futuro* and attendant life insurance requirement. We modify the trial court's award of attorney's fees to the wife to the amount of $29,060. The trial court's judgment is affirmed in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed as Modified; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and FRANK G. CLEMENT, JR., P.J., M.S., joined.

Phillip C. Lawrence, Chattanooga, Tennessee, for the appellant, Clinton Eugene Talley.

Glenna M. Ramer, Chattanooga, Tennessee, for the appellee, Carolyn Ann Talley.

**OPINION**

I.  Factual and Procedural Background

Carolyn Ann Talley ("Wife") filed a complaint for divorce on July 27, 2012, naming Clinton Eugene Talley ("Husband") as the defendant. The parties were married on January 18, 1986, and separated on November 1, 2012. Two children were born of the marriage, a daughter and son, who were ages 29 and 28, respectively, by the time of trial.

Although Wife previously had filed a divorce action in 2009, that cause was dismissed when the parties reconciled.

The trial court conducted a bench trial spanning two non-consecutive days in January and March 2016. At the time of trial, Wife was sixty-three years of age while Husband was fifty-nine years old. Wife testified that she had been employed with Provident Life and Accident Insurance Company (now known as Unum) for thirty-eight years, from 1972 until her retirement in January 2012. Wife was earning $34,500 per year as an administrative assistant at the time of her retirement. According to Wife, her only education following high school was one year of business school.

Husband related that he possessed a bachelor's degree in mechanical engineering from the University of Tennessee at Chattanooga. Husband worked for various employers in that field throughout the parties' marriage. Husband's most recent employment was with Chicago Bridge and Iron at its plant located in Waynesboro, Georgia. He commuted weekly in this position, traveling to work on Sunday afternoons and returning home on Thursdays. According to Husband, he rented an efficiency apartment in Waynesboro during the work week. Husband's gross annual income was approximately $74,000 in 2015.

Although Husband reported no significant health concerns, Wife described serious health problems which she claimed prevented her from being employed. Wife had undergone back surgery, two surgeries for breast cancer, and surgery for skin cancer. Wife also suffered from ongoing problems resulting from pulled ligaments in her leg and foot, as well as stiffness in her neck. She had also been hospitalized on four occasions for issues related to anxiety. Upon trial, Wife was receiving Social Security benefits in the amount of $1,475 per month. Wife was also receiving retirement benefits of $804 per month from Unum.

According to Wife, she realized in 2009 that something in the marriage was amiss when Husband became secretive, aloof, and cold. Following her investigation, Wife discovered evidence that Husband had been involved with another woman by the name of M.C. Wife stated that Husband admitted to her that he had bought an engagement ring for M.C. The parties' son corroborated Wife's testimony, relating a conversation during which Husband admitted that he had proposed to another woman. Husband denied having a sexual relationship with M.C. The parties eventually separated in November 2012.

Following the separation, Wife remained in the marital residence, which the parties had designed and constructed in 1992. Although title to the residence was not encumbered by a mortgage at the time of trial, Wife had been paying various expenses

related to the home's maintenance, including taxes, insurance, and homeowner's association dues since the parties' separation. Wife reported that her total monthly expenses averaged $3,488. The parties' adult daughter, who was attending college while working full time, was living with Wife and paying no rent.

Both parties described their spending habits during the marriage as "frugal." As a result, in addition to having paid off the mortgage indebtedness on the marital residence, the parties had amassed significant financial accounts during the marriage. Despite his claimed frugality, however, the proof demonstrated that Husband had purchased a home on Country Village Drive in 2011, which he described as an "investment." The purchase was without Wife's knowledge or consent. While Husband related that M.C. and her children lived in the home for a period of time, he claimed that M.C. paid rent, although no rental income appeared on the parties' income tax return for that year. Husband admitted at trial that he lost $15,000 to $20,000 on the sale of the home due to the "housing slump."

Husband later purchased a home on Anderson Avenue without Wife's knowledge and rented the dwelling to M.C. for several months. Again, the parties' tax return reflected no associated rental income. Husband asserted he was "building equity" in the home by making a mortgage payment of $983 per month while only charging M.C. $650 per month in rent. Eventually, Husband evicted M.C. because of excessive damage to the home. Husband also admitted, however, that he paid various expenses for M.C. during the parties' marriage, including rent for two separate apartments, moving expenses, utility and telephone expenses, Botox injections, and other miscellaneous expenses.

Following trial, the court entered an order on April 29, 2016. The court, *inter alia*, granted a divorce to Wife on the basis of Husband's inappropriate marital conduct. Having considered the factors provided in Tennessee Code Annotated § 36-4-121 regarding an equitable division of marital property, the court valued the parties' marital assets based on the evidence and fashioned a distribution with assets awarded to Wife valued at $542,763 and assets awarded to Husband worth $484,900. The trial court then deducted purported liabilities from Wife's award, establishing her net asset value at $489,338.

With respect to the marital residence, the trial court noted that both Wife and Husband presented experts who proffered appraised values of $265,000 and $285,000, respectively. In determining the value of the marital residence to be $275,000, with consideration given for the repairs needed, the court awarded the marital residence to Wife. Husband was awarded the equity in the Anderson Avenue rental home. In turn, the court valued and divided the remaining marital assets between the parties, including the present value of the marital portion of Wife's pension. Regarding the credibility of

the parties' testimony, the court credited Wife's testimony while finding Husband's testimony to be inconsistent and "in no way credible."

Concerning Wife's claim for spousal support, the trial court determined that Husband maintained a substantially greater ability to earn income and acquire assets because he remained employed. The court concluded that both parties had contributed to the marital estate while Husband was solely responsible for dissipation of assets. The court found that Husband's income was in excess of $6,000 per month while Wife only received $1,475 monthly in Social Security benefits and $206 monthly as the non-marital portion of her pension.[1] Based upon the parties' statements of income and expenses, the court found that Wife had a need for spousal support and Husband had the ability to pay. The court found as well that Husband's ability to support a third person during the marriage was evidence of his ability to pay spousal support. Moreover, the court determined that Wife could not be rehabilitated and that this was not an appropriate case for transitional alimony. The court therefore ordered Husband to pay Wife alimony *in futuro* in the amount of $1,800 per month.

Concerning Wife's reasonable attorney's fees, the trial court ordered Husband to pay same as an award of alimony *in solido*. Wife's attorney was directed to submit an affidavit regarding attorney's fees. Finally, the court instructed Husband to maintain life insurance in the amount of $500,000 for Wife's benefit in order to secure his alimony obligation.

On May 19, 2016, Wife filed a motion seeking approval of the amount of her attorney's fees, supported by an affidavit from her attorney. Husband filed a response in which he argued that Wife's motion was insufficient. The parties thereafter entered a stipulation regarding the total amount of fees paid by Wife to her attorney during the pendency of the case. This stipulation was incorporated into a final order entered by the court on June 23, 2016, in which the court directed Husband to pay $35,710 toward Wife's attorney's fees. Husband timely appealed.

---

[1] The trial court determined that it could not include in Wife's income the monthly distributions from the marital portion of her pension because that portion had already been included in the marital property distribution. *See* Tenn. Code Ann. § 36-5-121(j).

4

## II. Issues Presented

Husband presents the following issues for our review, which we have restated slightly:

1. Whether the trial court erred by reducing the total value of Wife's portion of the distribution of marital assets by an amount of unproven liabilities.

2. Whether the trial court erred by determining that Husband dissipated marital assets in the amount of $65,000, subsequently increasing Husband's total value of the distribution of marital assets by such amount.

3. Whether the trial court erred by ordering Husband to pay alimony *in futuro* when the parties' adult daughter was living with Wife.

4. Whether the trial court erred by awarding to Wife alimony *in futuro* in the amount of $1,800 per month.

5. Whether the trial court erred by requiring Husband to maintain life insurance for the benefit of Wife in the amount of $500,000.

6. Whether the trial court erred by crediting the testimony of Wife's expert rather than Husband's expert with reference to the value of Wife's defined benefit plan.

7. Whether the trial court erred by determining the values of certain marital assets in amounts different from that established by undisputed testimony.

8. Whether the trial court erred by awarding to Wife attorney's fees in the amount of $35,710 when Wife had paid a portion of this amount before trial and the attorney's affidavit was insufficient to support the award.

9. Whether the trial court's errors warrant a new trial.

5

## III. Standard of Review

In a case involving the proper classification and distribution of assets incident to a divorce, our Supreme Court has elucidated the applicable standard of review as follows:

> This Court gives great weight to the decisions of the trial court in dividing marital assets and "we are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures." *Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996). As such, when dealing with the trial court's findings of fact, we review the record de novo with a presumption of correctness, and we must honor those findings unless there is evidence which preponderates to the contrary. Tenn. R. App. P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). Because trial courts are in a far better position than this Court to observe the demeanor of the witnesses, the weight, faith, and credit to be given witnesses' testimony lies in the first instance with the trial court. *Roberts v. Roberts*, 827 S.W.2d 788, 795 (Tenn. Ct. App. 1991). Consequently, where issues of credibility and weight of testimony are involved, this Court will accord considerable deference to the trial court's factual findings. *In re M.L.P.*, 228 S.W.3d 139, 143 (Tenn. Ct. App. 2007) (citing *Seals v. England/Corsair Upholstery Mfg. Co.*, 984 S.W.2d 912, 915 (Tenn. 1999)). The trial court's conclusions of law, however, are accorded no presumption of correctness. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 744-45 (Tenn. 2002).

*Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007).

Furthermore, as this Court has previously held:

> Because Tennessee is a "dual property" state, a trial court must identify all of the assets possessed by the divorcing parties as either separate property or marital property before equitably dividing the marital estate. Separate property is not subject to division. In contrast, Tenn. Code Ann. § 36-4-121(c) outlines the relevant factors that a court must consider when equitably dividing the marital property without regard to fault on the part of either party. An equitable division of marital property is not necessarily an equal division, and § 36-4-121(a)(1) only requires an equitable division.

*McHugh v. McHugh*, No. E2009-01391-COA-R3-CV, 2010 WL 1526140, at *3-4 (Tenn. Ct. App. Apr. 16, 2010) (internal citations omitted). *See also Manis v. Manis*, 49 S.W.3d

295, 306 (Tenn. Ct. App. 2001) (holding that appellate courts reviewing a distribution of marital property "ordinarily defer to the trial judge's decision unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence.").

This Court has previously explained with regard to valuation of assets:

The value of marital property is a fact question. Thus, a trial court's decision with regard to the value of a marital asset will be given great weight on appeal. In accordance with Tenn. R. App. P. 13(d), the trial court's decisions with regard to the valuation and distribution of marital property will be presumed to be correct unless the evidence preponderates otherwise.

The value of a marital asset is determined by considering all relevant evidence regarding value. The burden is on the parties to produce competent evidence of value, and the parties are bound by the evidence they present. Thus the trial court, in its discretion, is free to place a value on a marital asset that is within the range of the evidence submitted.

*Wallace v. Wallace,* 733 S.W.2d 102, 107 (Tenn. Ct. App. 1987) (internal citations omitted).

Regarding alimony, our Supreme Court has "repeatedly and recently observ[ed] that trial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award." *See Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). The Court further explained:

[A] trial court's decision regarding spousal support is factually driven and involves the careful balancing of many factors. As a result, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision." *Kinard* [*v. Kinard*], 986 S.W.2d [220,] 234 [(Tenn. Ct. App. 1998)]. Rather, "[t]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006). Appellate courts decline to second-guess a trial court's decision absent an abuse of discretion. An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. This standard does

7

not permit an appellate court to substitute its judgment for that of the trial court, but "'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.'" *Henderson* [*v. SAIA, Inc.,*], 318 S.W.3d [328,] 335 [(Tenn. 2010)] (quoting *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)). Consequently, when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision.

*Id*. at 105-06 (other internal citations omitted).

As our Supreme Court also observed in *Gonsewski* regarding an award of attorney's fees:

It is well-settled that an award of attorney's fees in a divorce case constitutes alimony *in solido*. The decision whether to award attorney's fees is within the sound discretion of the trial court. As with any alimony award, in deciding whether to award attorney's fees as alimony *in solido,* the trial court should consider the factors enumerated in Tennessee Code Annotated section 36-5-121(i). A spouse with adequate property and income is not entitled to an award of alimony to pay attorney's fees and expenses. Such awards are appropriate only when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses, or the spouse would be required to deplete his or her resources in order to pay them. Thus, where the spouse seeking such an award has demonstrated that he or she is financially unable to procure counsel, and where the other spouse has the ability to pay, the court may properly grant an award of attorney's fees as alimony.

*Id*. at 105 (internal citations omitted). Furthermore, this Court has stated:

Our review of an award of attorney's fees is guided by the principle that "'the allowance of attorney's fees is largely in the discretion of the trial court, and the appellate court will not interfere except upon a clear showing of abuse of that discretion.'" *Mimms v. Mimms,* 234 S.W.3d 634, 641 (Tenn. Ct. App. 2007) (quoting *Taylor v. Fezell,* 158 S.W.3d 352, 359 (Tenn. 2005)). "Reversal of the trial court's decision [regarding] attorney fees at the trial level should occur 'only when the trial court applies an

incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party.'" *Church v. Church,* 346 S.W.3d 474, 487 (Tenn. Ct. App. 2010).

*Hernandez v. Hernandez,* No. E2012-02056-COA-R3-CV, 2013 WL 5436752, at *8 (Tenn. Ct. App. Sept. 27, 2013).

### IV. Value Reduction in Distribution of Marital Assets to Wife

The trial court's equitable division of marital assets reflects an initial allocation of assets with values of $542,763 to Wife and $484,900 to Husband. The trial court next reduced Wife's share by (1) $3,425 for "Legal Fees" and (2) $50,000 for "Amount needed to repair Marital Residence." The effect was to reduce the total value distributed to Wife to $489,338, thus creating an apparent near-equal division of marital assets. Husband contends, however, that these deductions were erroneous because no evidence supported them and the trial court provided no explanation regarding the $53,425 reduction in its order. Based upon our thorough review of the record, we hold that the evidence preponderates against the trial court's decision to reduce Wife's share of the marital estate from $542,763 to $489,338.

Tennessee Code Annotated § 36-4-121 (Supp. 2016) addresses the equitable division of marital property pursuant to divorce, providing in pertinent part:

(a)(1) In all actions for divorce or legal separation, the court having jurisdiction thereof may, upon request of either party, and prior to any determination as to whether it is appropriate to order the support and maintenance of one (1) party by the other, equitably divide, distribute or assign the marital property between the parties without regard to marital fault in proportions as the court deems just.

* * *

(c) In making equitable division of marital property, the court shall consider all relevant factors including:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

9

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5)(A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed.

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

As this Court has explained with regard to an equitable marital property distribution:

The approach to dividing a marital estate should not be mechanical, but rather should entail carefully weighing the relevant factors in Tenn. Code Ann. § 36-4-121(c) in light of the evidence that the parties have

presented. *Flannary v. Flannary,* 121 S.W.3d at 650-51; *Tate v. Tate,* 138 S.W.3d 872, 875 (Tenn. Ct. App. 2003); *Kinard v. Kinard,* 986 S.W.2d at 230. Trial courts have broad discretion in fashioning an equitable division of marital property, *Jolly v. Jolly,* 130 S.W.3d 783, 785 (Tenn. 2004); *Fisher v. Fisher,* 648 S.W.2d 244, 246 (Tenn. 1983), and appellate courts must accord great weight to a trial court's division of marital property. *Wilson v. Moore,* 929 S.W.2d 367, 372 (Tenn. Ct. App. 1996); *Batson v. Batson,* 769 S.W.2d 849, 859. Accordingly, it is not our role to tweak the manner in which a trial court has divided the marital property. *Morton v. Morton,* 182 S.W.3d at 834. Rather, our role is to determine whether the trial court applied the correct legal standards, whether the manner in which the trial court weighed the factors in Tenn. Code Ann. § 36-4-121(c) is consistent with logic and reason, and whether the trial court's division of the marital property is equitable. *Jolly v. Jolly,* 130 S.W.3d at 785-86; *Gratton v. Gratton,* No. M2004-01964-COA-R3-CV, 2006 WL 794883, at *7 (Tenn. Ct. App. Mar. 28, 2006) (No Tenn. R. App. P. 11 application filed); *Kinard v. Kinard,* 986 S.W.2d at 231.

*Owens v. Owens*, 241 S.W.3d 478, 490 (Tenn. Ct. App. 2007), *perm. app. denied* (Tenn. Sept. 17, 2007).

Wife argues that the trial court did not express an intention that the marital assets be divided so as to establish an equal distribution. As Wife points out, when analyzing the statutory factors related to an equitable distribution of marital assets found in Tennessee Code Annotated § 36-4-121, the trial court found that Husband enjoyed better health, a superior earning capacity, and a greater ability to acquire assets in the future. Wife thus argues that a distribution weighted in Wife's favor was warranted. With regard specifically to the $3,425 in legal fees, Wife postulates that this reduction was superseded by the court's ultimate award of attorney's fees in the amount of $35,710.

We note that the trial court ultimately awarded to Wife her reasonable attorney's fees as alimony *in solido* in the total amount sought by Wife.[2] Ergo, a reduction of $3,425 for attorney's fees was unwarranted. Furthermore, with reference to the $50,000 in "repairs," both experts testified that they had considered the condition of the marital residence when arriving at their conclusions concerning an appraised value. Additionally, the trial court indicated in its April 29, 2016 order that the value placed on the marital residence reflected that "the conditions of the residence needing repair and

---

[2] The amount of attorney's fees awarded to Wife will be addressed in a subsequent section of this Opinion.

11

maintenance have progressed." Simply stated, the record in this matter does not support the reduction of Wife's share of the marital assets in the amount of $53,425.

The trial court made findings with regard to certain statutory factors, *see* Tenn. Code Ann. § 36-4-121, militating in favor of a greater share of the marital estate being awarded to Wife. We agree with Wife that the trial court's findings with respect to these factors weigh in favor of Wife. Eliminating the reduction of $53,425 from Wife's share of the marital estate results in an allocation of assets to Wife in the amount of $542,763, which is 52.8% of the total marital estate. Husband's share of $484,900 equates to 47.2% of the total marital estate. This relatively small difference does not demonstrate an inequitable distribution of the marital estate. Accordingly, we affirm the trial court's division of marital assets.

## V. Dissipation of Marital Assets

Also concerning the trial court's distribution of marital property, Husband contests the court's determination that he dissipated marital assets to the extent of $65,000. Husband acknowledges in his appellate brief that "[a]lthough there are confirmations from Husband that he spent money that could be characterized as dissipations," he disputes the total amount determined by the trial court. Husband contends that inasmuch as Wife's proposed division of assets suggested $65,000 as the amount of dissipation, the trial court simply accepted that amount without sufficient proof. Husband further asserts that the loss suffered through the sale of the Country Village Drive home should not be considered dissipation because it was actually a speculative investment.

Wife contends that the trial court properly found that Husband had dissipated marital assets by spending money for the benefit of friends and paramours, including investing in real estate "for others." Wife presented proof that Husband purchased two engagement rings for M.C.; paid M.C.'s rent when she lived in two separate apartments; purchased two homes for M.C.'s use; and paid bills for M.C., including utilities, moving expenses, Botox injections, and other expenses. Wife argues that the proof established dissipation in an amount greater than $65,000.

Upon our thorough review of the evidence presented, we conclude that the trial court's determination that Husband dissipated assets of the marital estate was proper and supported by the proof. Husband admitted that he purchased two homes during the marriage, without Wife's knowledge or consent, where Husband allowed M.C. and her children to live for periods of time. Although Husband claimed that he collected rent from M.C., he presented no proof of this claim. The trial court found Husband's credibility lacking. Husband further admitted that he paid sums towards M.C.'s rent for

two different apartments, as well as phone, utility, and many other types of expenses on her behalf.

With reference to the amount of dissipation, Wife presented a detailed list of expenses totaling $25,562, which amount she claimed Husband expended for non-marital purposes. Wife explained that when compiling this list, she reviewed records from financial accounts and identified expenses that she believed were for the benefit of M.C. or others. These expenses were associated with establishments or geographical areas that she and Husband had not frequented. While Husband reviewed Wife's list during his cross-examination, he disputed the purpose of many expenses, but not all. However, the trial court found that Husband's "demeanor [was] consistent with one testifying with no veracity."

Wife also proffered a document she claimed to have found in or around Husband's desk. Listed were various expenses paid for propane, rent, car repairs, groceries, Botox, and other expenses. Certain expenses were specifically designated as paid for the benefit of M.C., including moving expenses (which item Husband specifically admitted at trial), motel expenses for "Columbia/Myrtle Beach Trip," tooth removal, and a family reunion. Wife insisted that she had not prepared this list, believing instead that Husband had. Although Husband disputed this assertion, Wife testified that none of the listed expenses were paid for her benefit. The delineated expenses totaled $24,999.

Husband admitted during trial that he lost $15,000 to $20,000 associated with the purchase of the Country Village Drive home. The trial court found that "the loss on the house which the Court believes to have been purchased for the use of [M.C.] as opposed to investment purposes is a dissipation." The court ultimately concluded that "the dissipation of marital assets has been in the amount of $65,000.00." The record clearly demonstrates that Husband significantly dissipated the parties' marital assets. The evidence does not preponderate against the trial court's determination with respect to the amount of the dissipation.

Husband asserts that the trial court erred in assigning him 100% of the value of the dissipated assets and effecting an increase in his share of the marital assets in a corresponding amount. In its division of marital assets, the court included a $65,000 asset in Husband's column entitled "Dissipation of Marital Assets by Mr. Talley." Husband argues that by adding this amount to the value of his assets, the court charged him with the entire dissipation, thereby ignoring the fact that he had an interest in these marital assets as well. *See Odom v. Odom*, No. E2007-02250-COA-R3-CV, 2008 WL 4415429, at *8 (Tenn. Ct. App. Sept. 30, 2008) ("Wife argues that she is entitled to credit for the full amount of the dissipated assets, which essentially ignores the fact that Husband also had an interest in these assets.").

13

In this case, however, the trial court added the amount of dissipation as an "asset" to Husband's column, purportedly representing marital funds that would have been available had Husband not spent them. In turn, the court proceeded to divide the marital estate in an equitable manner, thereby distributing this asset between the parties as a part of the whole. A similar approach adopted in *Odom* was affirmed by this Court. *Id.* Therefore, we determine Husband's argument with regard to the trial court's assignment of the amount of dissipation to be unavailing.

## VI. Valuation of Wife's Defined Benefit Plan

Husband argues that the trial court erred by accepting the testimony of Wife's expert witness, Shannon Farr, rather than Husband's expert, Clarence Patton Hilliard, to establish the present value of Wife's defined benefit plan. According to Husband, his expert held superior qualifications. We note, however, that Husband's counsel did not question Ms. Farr's qualifications at trial or the court's ruling that Ms. Farr could testify as an expert witness. Consequently, Husband has waived any issue regarding Ms. Farr's qualifications. *See Int'l Mktg. Grp., Inc. v. Speegle*, No. M1999-00468-COA-R3-CV, 2000 WL 329375, at *3 (Tenn. Ct. App. Mar. 30, 2000), *perm. app. denied* (Tenn. Oct. 30, 2000).

Husband also asserts that the trial court should have adopted the value of this asset as proffered by Mr. Hilliard because Mr. Hilliard was "more persuasive." Following our thorough review of the evidence presented by both experts, however, we conclude that the evidence does not preponderate against the trial court's determination regarding the value of Wife's defined benefit plan. "When expert testimony differs, it is within the discretion of the trial judge to determine which testimony to accept." *Davis v. Ford Motor Co.*, No. W2007-01226-COA-R3-CV, 2008 WL 684446, at *7 (Tenn. Ct. App. Mar. 14, 2008) (quoting *Bohanan v. City of Knoxville,* 136 S.W.3d 621, 624 (Tenn. 2004)). Both experts in this case were well qualified. Their disagreement regarding the present value of Wife's defined benefit plan appeared to be predicated largely on the discount rate applied by each. Both experts fully explained the bases for their decisions with regard to the applicable discount rate. Based on the rates utilized, Ms. Farr calculated a present value for the marital portion of this asset in the amount of $78,809 while Mr. Hilliard calculated a value of $96,903.[3]

---

[3] Mr. Hilliard testified that the present value of Wife's defined benefit plan would be $130,950. However, Husband's counsel conceded that such value would need to be reduced by the percentage supplied by Ms. Farr in order to arrive at the present value of the <u>marital</u> portion of this asset. This fraction was calculated by dividing the number of years the parties were married by the number of years Wife worked for Unum, which was 26/35, or 74%. Therefore, reducing the total value of $130,950, as determined by Mr. Hilliard, by 74% yields a value for the marital portion of this asset of $96,903.

In its equitable division of marital assets, the trial court adopted a value for Wife's defined benefit plan of $78,809. Affording the deference accorded to the trial court regarding matters of expert witness credibility, we conclude that Husband has not overcome the presumption of correctness afforded by Tennessee Rule of Appellate Procedure 13(d). We further note that the trial court placed a value upon this asset that was within the range of evidence submitted. *See Wallace,* 733 S.W.2d at 107. We conclude that this issue is without merit.

## VII. Valuation of Certain Assets

Concerning his final issue associated with the marital property valuation and distribution, Husband contends that the trial court erred in valuing the parties' cemetery burial plots, the Anderson Avenue home, and a 1999 Chevrolet Corvette. We will address each of these assets in turn.

The trial court determined that the cemetery burial plots were worth $2,000, awarding this marital asset to Wife. Husband opined that the burial plots were worth $5,000. Husband contends that Wife provided no trial testimony regarding the value of the plots. Although Husband's contention is true, Wife did value the plots at $495 on her asset and liability statement, which Wife swore to be "true and correct to the best of [Wife's] knowledge, information and belief." Such financial statements are required by Rule 10.01(b) of the Hamilton County Circuit Court Local Rules of Civil Practice, which provides in pertinent part:

> In all divorce cases, at least ten (10) days before trial, both parties shall file and serve verified financial statements listing all assets, the date of their acquisition, their purchase price, any encumbrance thereon, and their present market value and all liabilities, including the date of their incurrence, the remaining balance, and the amount of monthly payments thereon. The list of assets and liabilities shall include all assets and liabilities of the parties, whether individual or joint, and specify whether they were acquired or incurred before or during the marriage.

Furthermore, Tennessee Code Annotated § 36-4-116(b) (2014) establishes:

> Any such judge or chancellor [in a divorce action] may, however, require a sworn statement from such persons relative or pertaining to the income of the parties, their expenses, any real or personal property in which the parties have an interest and the extent of such parties' interest therein, and

> such sworn statement shall be admissible as evidence of the truth of the
> contents.

(Emphasis added.) *See also Economides v. Economides*, No. 02A01-9109-CV-00189, 1994 WL 95870, at \*3 (Tenn. Ct. App. Mar. 24, 1994) (holding that Husband's sworn statement was sufficient to establish the value of a marital asset in the absence of testimony at trial regarding the asset). Inasmuch as the parties were required to file a sworn statement regarding their assets, the value of the parties' burial plots provided on Wife's sworn asset statement may be considered admissible proof of the asset's value pursuant to Tennessee Code Annotated § 36-4-116(b). As such, the court selected a value that was within the range of evidence submitted. *See Wallace,* 733 S.W.2d at 107. We conclude that the trial court did not err in its determination of the value of the burial plots.

With regard to the Anderson Avenue residence, the trial court valued the home at $135,000 but found a corresponding mortgage encumbrance of $117,945. The net equity in the home, valued at $17,054, was awarded to Husband. At trial, Husband testified that he believed the home was worth $130,000. Husband's asset and liability statement reflected a current mortgage balance of $115,712. As Husband asserts, incorporating this balance results in an equity value of $14,288. The warranty deed presented at trial evinced Husband's purchase of the home for $129,900 in 2011. Husband acknowledged making marginal improvements to the home since that time, some of which were occasioned by the damage caused by M.C. and her children. Husband also suggested that he was "building equity" in the home. Although Wife provided no testimony regarding this asset, she listed the value of the home as $135,000 and the attendant mortgage debt as $117,945 on her sworn asset and liability statement. Again, because the trial court found values within the range of evidence submitted, *see id*., we find no error in the trial court's determination of the home's equity value.

Finally, with respect to the 1999 Chevrolet Corvette, Husband opined that this automobile was worth $10,899, purportedly relying in part on the value provided by the Kelley Blue Book. Wife did not testify regarding the value of the Corvette but listed the vehicle on her sworn asset and liability statement as having a value of $20,000. During cross-examination, Husband admitted valuing the 1999 Chevrolet Corvette at $20,000 on a previous statement he had signed to obtain a policy of automobile insurance in that amount. The trial court adopted the $20,000 value, likewise within the range of evidence submitted. *See id*. We determine Husband's contention regarding the value of this asset also to be without merit. Having carefully reviewed the record, we conclude that the trial court did not err in its valuation of the parties' cemetery burial plots, the Anderson Avenue home, or the 1999 Chevrolet Corvette.

16

## VIII. Alimony *In Futuro*

Husband contends that the trial court erred in ordering him to pay alimony *in futuro* to Wife when Wife had a third person, the parties' adult daughter, living in the marital residence. Alternatively, Husband argues that the trial court erred in the amount of alimony *in futuro* awarded.

Wife acknowledged at trial that the parties' daughter, who is twenty-nine years of age, had been residing with Wife since the parties' separation. Wife further related that their daughter, who was working full time while attending college, paid no rent. According to Wife, the daughter contributed minimal financial support to the household by purchasing groceries that she shared with Wife. Wife also explained that her daughter paid all of her own medical, automobile, insurance, and other expenses.

As Husband points out, Tennessee Code Annotated § 36-5-121(f)(2)(B) (2014) provides:

> In all cases where a person is receiving alimony in futuro and the alimony recipient lives with a third person, a rebuttable presumption is raised that:
>
> > (i) The third person is contributing to the support of the alimony recipient and the alimony recipient does not need the amount of support previously awarded, and the court should suspend all or part of the alimony obligation of the former spouse; or
> >
> > (ii) The third person is receiving support from the alimony recipient and the alimony recipient does not need the amount of alimony previously awarded and the court should suspend all or part of the alimony obligation of the former spouse.

This Court has previously determined that a "third person" may include an adult child of the parties. *See Hickman v. Hickman*, No. E2013-00940-COA-R3-CV, 2014 WL 786506, at *6 (Tenn. Ct. App. Feb. 26, 2014) ("Tennessee courts have consistently held that the 'lives with a third person' language applies to any third person, including adult children."). Wife contends that the above statutory language does not apply in this case, however, because it is only intended to apply to an action seeking to <u>modify</u> an award of alimony *in futuro* rather than an initial award.

In *Jenkins v. Jenkins*, No. E2014-02234-COA-R3-CV, 2015 WL 5656451, at *6-7 (Tenn. Ct. App. Sept. 25, 2015), this Court addressed a similar argument, stating:

We note that the language utilized in this statutory subsection suggests that it is intended to apply in an action involving an alimony modification rather than an initial alimony award. For example, subsection (B) refers to a person "receiving alimony in futuro," and subsection (B)(ii) speaks to alimony "previously awarded." Tenn. Code Ann. § 36-5-121 (f)(2)(B); *see also Gentry v. Gentry*, No. M2007-00876-COA-R3-CV, 2008 WL 275881 at *3 (Tenn. Ct. App. Jan. 31, 2008) (explaining that although the party seeking the alimony modification normally bears the burden of proving that the modification is warranted, Tennessee Code Annotated § 36-5-121 (f)(2)(B) represents one type of change in circumstances wherein the party receiving the alimony will bear the evidentiary burden).

Assuming, *arguendo*, that this statutory subsection would apply to the instant action involving an initial alimony award, we do not find Husband's argument regarding Wife's alleged contributions to the parties' adult children to be persuasive. The evidence demonstrated that the parties' two oldest daughters were living away at college and did not reside with Wife. Wife's only testimony regarding her adult children was that while her food expense might decrease slightly when the youngest child left for college, she also considered that their daughters would still be home during summer breaks. Wife also admitted that her listed expenses for school supplies, tutoring, and music lessons, which were attributable to the parties' youngest daughter, would end when that daughter graduated from high school. According to Wife, all other monthly expense amounts listed were for her personally.

Based on this Court's ruling in *Jenkins*, it is uncertain whether this statutory section would apply to an initial award of alimony. Even assuming, *arguendo*, that the statute would apply to an initial alimony award, we determine that Wife rebutted the presumption that the parties' daughter financially contributed to or received significant support from Wife's household. Wife testified that the parties' daughter paid no rent and did not otherwise substantially contribute to the household. Furthermore, a review of Wife's income and expense statement and her testimony regarding same demonstrates that the only expenses Wife claimed that arguably benefitted her daughter in part were the monthly charges related to gas, water, electricity, and telephone/cable. These expenses totaled $460 per month, or roughly 14% of Wife's total monthly expenses of $3,488. Husband's argument concerning this issue is unavailing.

As to the amount of the trial court's alimony *in futuro* award to Wife, Husband asserts that Wife was capable of supporting herself during the period of separation with

minimal assistance from Husband and without incurring debt or depleting assets. In response, Wife testified that she was extremely thrifty during the parties' separation and did receive Husband's assistance in paying expenses related to the marital residence. Wife contends that she should not be forced to continue to live in such frugal circumstances while Husband enjoys the benefit of his greater earning potential.

Tennessee Code Annotated § 36-5-121 provides in pertinent part:

(i) In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Several of the statutory factors, including Husband's significantly greater earning capacity, better physical health, and higher level of education, militate in favor of an award of spousal support to Wife. As the trial court properly determined, Wife demonstrated a need for spousal support. Wife's social security and non-marital pension income only amounted to approximately $1,682 per month while Wife claimed expenses of $3,488 per month. Furthermore, Husband demonstrated an ability to pay alimony. Husband earned over $6,000 per month while claiming expenses of $4,386 per month. As the trial court noted, "[Husband] was able to support another party during the marriage which is further evidence of his ability to pay." As such, the trial court did not abuse its discretion with regard to the amount of alimony awarded. The evidence does not preponderate against the trial court's award to Wife of alimony *in futuro* in the amount of $1,800 per month.

IX. Life Insurance

Husband complains that the trial court erred by requiring him to maintain a life insurance policy in the amount of $500,000 in order to secure his alimony obligation. As provided in Tennessee Code Annotated § 36-5-121(l):

To secure the obligation of one party to pay alimony to or for the benefit of the other party, the court may direct a party to designate the other party as the beneficiary of, and to pay the premiums required to maintain, any existing policies insuring the life of a party, or to purchase and pay the premiums required to maintain such new or additional life insurance

20

designating the other party the beneficiary of the insurance, or a combination of these, as the court deems appropriate.

Clearly, the trial court has discretion regarding whether to order such security for an alimony obligation. *See Edwards v. Edwards*, No. M2010-02223-COA-R3-CV, 2012 WL 2337535, at *12 (Tenn. Ct. App. June 19, 2012) ("By using the word 'may' rather than the word 'shall,' the legislature has indicated that the courts are to use their discretion in this regard."). The evidence does not preponderate against the trial court's decision requiring that Husband maintain life insurance securing Wife's alimony award.

## X.  Award of Attorney's Fees

Husband argues that the trial court erred in ordering him to pay $35,710 for Wife's attorney's fees as alimony *in solido*. Husband asserts that Wife's attorney filed an insufficient affidavit in which counsel failed to provide a detailed summary of time expended and also failed to differentiate between the amount of attorney's fees and the amount of expenses. Husband further asserts that Wife had already paid $23,300 of this fee amount during the pendency of the proceeding, utilizing marital funds.

The trial court's final order contains the details of a stipulation entered into by the parties concerning attorney's fees:

1.  The itemization of payments incorporated into the affidavit of [Husband's counsel] appended to the Response to Motion to Approve Attorney Fees filed on June 1, 2015 reflects payments made by [Wife] to [Wife's counsel] for attorney's fees that were charged in connection with the above-styled case.

2.  Except for a payment of $10,000 that was made as a partial distribution from joint account held by [Wife], all other payments made by [Wife] were made from her income.

3.  In addition to the payments reflected in the affidavit referred to above, [Wife] made the following payments to [Wife's counsel] from her income:
    [payments listed totaling $2,700]

4.  The total of [Wife's] payments to [Wife's counsel] toward her attorney's fees pending the final judgment in this case amount to $23,300.00.

5. [Wife] seeks an award of attorney's fees in the amount of $35,710.80 (total incurred fees of $40,710.80 less $5,000.00 paid from joint assets).

6. [Husband] seeks credit for all attorney fee payments made by [Wife] during the pendency of the case.

The trial court awarded to Wife attorney's fees in the amount of $35,710.

An award of attorney's fees is reviewed pursuant to an abuse of discretion standard. *See Hernandez,* 2013 WL 5436752, at *8. As our Supreme Court has explained regarding the abuse of discretion standard of review:

> To avoid result-oriented decisions or seemingly irreconcilable precedents, reviewing courts should review a lower court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions. When called upon to review a lower court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and should review the lower court's legal determinations de novo without any presumption of correctness.

*Lee Med., Inc. v. Beecher,* 312 S.W.3d 515, 524-25 (Tenn. 2010) (internal citations omitted).

Husband first complains that Wife's counsel's affidavit was insufficient because Wife's counsel failed to provide a detailed summary of time expended and also failed to differentiate between the amount of attorney's fees and the amount of expenses. This Court has elucidated the following with regard to such an argument:

> We begin by recognizing that it is not always necessary for there to be a "fully developed record" when the judge who presided over a case is asked to award attorney's fees. *Miller v. Miller,* 336 S.W.3d 578, 587 (Tenn. Ct. App. 2010). Indeed, trial courts are generally capable of determining the value of an attorney's services by virtue of the fact that they have overseen the proceedings before them. *See Richards v. Richards,*

22

No. M2003-02449-COA-R3-CV, 2005 WL 396373, at *15 (Tenn. Ct. App. Feb. 17, 2005).

"Should a dispute arise as to the reasonableness of the fee awarded, then in the absence of any proof on the issue of reasonableness, it is incumbent upon the party challenging the fee to pursue the correction of that error in the trial court by insisting upon a hearing on that issue, or to convince the appellate courts that he was denied the opportunity to do so through no fault of his own." *Moran v. Willensky,* 339 S.W.3d 651, 664 (Tenn. Ct. App. 2010); *see Kline* [*v. Eyrich*]*,* 69 S.W.3d [197,] 210 [(Tenn. 2002)]. Accordingly, a trial court is not required to hold a hearing as to the reasonableness of the amount of attorney's fees awarded unless a party makes a timely request. *See Moran,* 339 S.W.3d at 664; *Richards,* 2005 WL 396373, at *15.

*Cremeens v. Cremeens*, No. M2014-01186-COA-R3-CV, 2015 WL 4511921, at *12 (Tenn. Ct. App. July 24, 2015) (remanding for a hearing upon determining that the trial court should have held a hearing on the reasonableness and necessity of the fees requested by the plaintiff mother because the defendant father had timely requested such a hearing).

In the case at bar, the record demonstrates no request by Husband for a hearing regarding the reasonableness of the amount of attorney's fees sought. Although Husband did generally object to Wife's motion seeking approval of an award of attorney's fees, Husband did not seek a hearing on this issue, and his counsel's affidavit did not address the reasonableness of the total amount claimed for attorney's fees. The trial court was therefore capable of "determining the value of an attorney's services by virtue of the fact that [the judge had] overseen the proceedings before [it]." *See Cremeens*, 2015 WL 4511921, at *12.

Husband also argues that because Wife had already paid $23,300 of the total fee amount during the pendency of the proceedings from marital funds, awarding $23,300 to Wife from Husband's share of the marital estate would, in effect, force Husband to pay this amount twice. We agree. Although the parties stipulated that Wife had paid the majority of the $23,300 total payment from "her income," these payments were made during the marriage and were therefore made from marital funds. *See* Tenn. Code Ann. § 36-4-121(b)(1)(A) (Marital property "means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing . . . ."); *see also Wilson v. Moore*, 929 S.W.2d 367, 374 (Tenn. Ct. App. 1996) (determining that the husband's income earned during the marriage was marital property). Under the trial court's judgment, it would be appropriate

23

to charge Husband with half of the $23,300 amount, or $11,650.  We modify the amount of attorney's fees awarded to Wife to $29,060.[4]

## XI.  New Trial

Husband argues that the trial court made several errors in this case, requiring that he be granted a new trial.  Having determined that only one modification to the trial court's judgment is necessary, we determine this issue to be without merit.

## XII.  Conclusion

For the foregoing reasons, we affirm the trial court's judgment regarding the equitable distribution of the parties' marital property.  We also affirm the trial court's award of spousal support and the court's requirement regarding life insurance to secure Husband's alimony obligation.  We modify the trial court's award of attorney's fees to Wife to the amount of $29,060.  We affirm the remainder of the trial court's judgment. Costs on appeal are taxed to the appellant, Clinton Eugene Talley.

_____
THOMAS R. FRIERSON, II, JUDGE

---

[4] $40,710 in attorney's fees sought minus $11,650 in attorney's fees previously paid establishes this net amount.